IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ADAM HARTMAN,**

    **Plaintiff,**

**v.**     //     **CIVIL ACTION NO. 1:15CV26**
                        **(Judge Keeley)**

**WHITE HALL PHARMACY, LLC,**
**C. GENE WRIGHT, TERRI VILAIN,**
**JEFFREY TUCKER,**

    **Defendants.**

## MEMORANDUM OPINION

On June 18, 2015, the Court orally granted the "Motion to Certify Question to the Supreme Court of Appeals of West Virginia" filed by the plaintiff, Adam Hartman ("Hartman"), and stayed its ruling on the "Motion to Dismiss Count II of Plaintiff's Complaint" filed by the defendants, White Hall Pharmacy, LLC ("White Hall"), C. Gene Wright ("Wright"), Terri Vilain ("Vilain"), and Jeffrey Tucker ("Tucker") (collectively, the "defendants"). The Court advised the parties that this Memorandum Opinion would follow.

**I.**

This case involves retaliatory discharge claims stemming from Hartman's termination from employment on October 31, 2014. Wright and Vilain are the member-owners of White Hall, a pharmacy with two locations in Fairmont, West Virginia. Tucker is White Hall's director of business operations and human resources. Hartman began

working at White Hall as an intern in April 2011, and was later promoted to a registered staff pharmacist, and then to pharmacist-in-charge.

In May 2014, Hartman's attorney notified the defendants that they had failed to provide his client time for meals and rest breaks, nor had they paid him holiday or overtime pay. Hartman alleges that, since receiving such notice, the defendants have engaged in a "campaign of retaliation" against him for having asserted his rights. (Dkt. No. 6-1 at 5). Hartman points out that, although he was never disciplined during his employment with White Hall, the defendants suspended him effective August 18, 2014.

On August 22, 2014, Hartman filed two lawsuits against the defendants. First, he sued them in the Circuit Court of Marion County, West Virginia, alleging that they had failed to provide him time for meals and rest breaks, as well as holiday pay, in violation of the West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1, et seq. (the "WPCA") (the "WPCA Action"). Second, he filed a collective action in this Court under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), alleging that the defendants had failed to compensate him and other employees for overtime pay (the "FLSA Action").

**HARTMAN v. WHITE HALL PHARMACY, LLC, ET AL.**          **1:15CV26**

**MEMORANDUM OPINION**
_____

The parties settled the FLSA Action on October 15, 2014, and the WPCA Action on October 24, 2014. Hartman alleges that "[t]he final step in the resolution of the Civil Actions occurred on October 28, 2014." (Dkt. No. 6-1 at 4). Three days later, the defendants terminated Hartman's employment. Although the defendants claim Hartman was fired as "part of a reduction in force," Hartman characterizes that as "a pretext to mask Defendants' unlawful retaliatory motives." Id.

On January 26, 2015, Hartman filed the instant action in the Circuit Court of Marion County, West Virginia, alleging "retaliatory discharge claims" against the defendants. (Dkt. No. 13 at 2). Count I asserts a violation of the FLSA, 29 U.S.C. § 215(a)(3), which prohibits the discharge of an employee because he or she has "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." Count II asserts common law retaliatory discharge in violation of a substantial public policy embodied by § 21-5-3 of the WPCA, which requires employers to pay employees all "wages due" at least once every two weeks. Finally, Count III asserts a violation of § 21-5-4 of the WPCA, which requires companies to pay "wages in full" to discharged employees no later than the earlier of the next regular payday or four business days after termination.

_____

The defendants moved to dismiss Count II of Hartman's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the WPCA is not a "substantial public policy" within the meaning of Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270, 275 (W. Va. 1978). The defendants also contend that Count II is preempted by the FLSA.

In response, Hartman filed a motion to certify the following question to the Supreme Court of Appeals of West Virginia: "Does the [WPCA], in particular § 21-5-3, which requires that wages be paid every two weeks, embody a substantial public policy which supports a claim for wrongful discharge where the employee alleges he was fired in retaliation for pursuing a claim for pay pursuant to § 21-5-3?" (Dkt. No. 14 at 2). All matters are fully briefed and ripe for review.

## II.

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

### III.

#### A.

Count II of Hartman's complaint, which alleges that the defendants fired Hartman "in retaliation for [his] engaging in protected activity by complaining that he was being denied pay for rest periods and holiday pay and asserting his rights under the WPCA" (dkt. no. 6-1 at 6) (emphasis added), is not preempted by FLSA. In their motion, the defendants misapprehend that Count II "allege[s] retaliation for initiating suit against Defendants related to White Hall's overtime procedures and payments." (Dkt. No. 5 at 7) (emphasis added). Moreover, courts have held that state law claims based on an employee's right to vacation pay are not preempted by the FLSA. See, e.g., Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 462-63 (E.D.N.Y. 2011) ("[T]he only

**HARTMAN v. WHITE HALL PHARMACY, LLC, ET AL.**                   1:15CV26

**MEMORANDUM OPINION**
_____

potential overlap between the state common law claims and the FLSA is the recovery for overtime wages, because the FLSA does not provide recovery for accrued vacation and sick time."); Nimmons v. RBC Ins. Holdings (USA), Inc., No. 6:07CV2637, 2007 WL 4571179, at *2 n.1 (D.S.C. Dec. 27, 2007) ("Plaintiff's claim for failure to pay accrued vacation pay is not preempted or otherwise foreclosed by the FLSA claim."). Therefore, preemption is not a bar to Count II.

**B.**

The Court turns next to the heart of the parties' motions, that is, whether § 21-5-3 of the WPCA is a substantial public policy that can sustain a retaliatory discharge claim. In Harless, 246 S.E.2d at 275, the Supreme Court of Appeals of West Virginia permitted a cause of action where an employee who had been terminated from employment establishes that "the employer's motivation for the discharge contravenes some substantial public policy principle." The court later

> articulated the necessary proof for a claim for relief for wrongful discharge in contravention of substantial public policy as follows:
>
>> (1) [Whether a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

>    (2) [Whether] dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
>    (3) [Whether t]he plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
>    (4) [Whether t]he employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

Swears v. R.M. Roach & Sons, Inc., 696 S.E.2d 1, 6 (W. Va. 2010) (alterations and italics in original) (quoting Feliciano v. 7-Eleven, Inc., 559 S.E.2d 713, 723 (W. Va. 2001)).

Count II of Hartman's complaint alleges that the defendants fired him "in retaliation for [his] engaging in protected activity by complaining that he was being denied pay for rest periods and holiday pay and asserting his rights under the WPCA." (Dkt. No. 6-1 at 6). It further alleges that "[t]he WPCA is a substantial public policy of the State of West Virginia." Id.

The defendants attack this conclusion under the first element of Hartman's prima facie Harless claim, i.e., the clarity element. As support, they rely on two decisions from the United States District Court for the Southern District of West Virginia: Wiley v. Asplundh Tree Expert Co., 4 F. Supp. 3d 840 (S.D.W. Va. 2014)

7

**HARTMAN v. WHITE HALL PHARMACY, LLC, ET AL.**             **1:15CV26**

**MEMORANDUM OPINION**
_____

(Johnston, J.); and Baisden v. CSC-Pa, Inc., No. 2:08CV01375, 2010 WL 3910193 (S.D.W. Va. Oct. 1, 2010) (Goodwin, J.).

In Baisden, 2010 WL 3910193 at *5, the plaintiff asserted, inter alia, a Harless claim for "retaliatory discharge, arguing that he was wrongfully terminated for trying to enforce his rights under the [WPCA]." Relying on the decision of the Supreme Court of Appeals of West Virginia in Roberts v. Adkins, 444 S.E.2d 725 (W. Va. 1994), Judge Goodwin summarily dismissed the claim by "declin[ing] to recognize a new type of Harless action." Baisden, 2010 WL 3910193 at *5.

Notably, in Roberts, the Supreme Court of Appeals had held:

A cause of action for wrongful discharge may exist under West Virginia Code § 21-5-5 (1989) [a section of the WPCA],[1] for the retaliatory discharge of an employee because of the employee's purchase of goods from a competitor of a separate and distinct business owned by the employer, where the employee did not work for the employer's separate and distinct business and, where the purchased goods were in no way related to or within the scope of the employment.

Syl. Pt. 4, 444 S.E.2d at 726.

---

[1] This section of the WPCA prohibits employers from requiring employees to purchase particular goods or supplies with their wages. See § 21-5-5; see also Roberts, 444 S.E.2d at 729 (explaining that the original purpose of the statute was to "alleviate the situation in which coal companies required miners to make their purchases at the company store . . . either by deducting said purchases from their wages or by being paid in company script which was spendable only at the company store").

Despite its holding, the court cautioned that "[t]his interpretation of West Virginia's Code § 21-5-5 is in no way intended to unlock a Pandora's box of litigation in the wrongful discharge arena." Id. at 729. This statement provided the basis for Judge Goodwin's decision to dismiss the Harless claim in Baisden. 2010 WL 3910193 at *5 ("The West Virginia Supreme Court of Appeals has not recognized Harless actions for violations of the [WPCA] and has read Harless narrowly so as not to 'unlock a Pandora's box of litigation in the wrongful discharge arena.'") (quoting Roberts, 444 S.E.2d at 729).

The question whether the WPCA provides the predicate public policy for a Harless claim was raised again in Wiley, 4 F. Supp. 3d at 843-44. There, the plaintiffs, who had filed a putative collective action, alleged, inter alia, a Harless claim premised on the WPCA, specifically § 21-5-3. Id. at 841. The defendants filed a motion to dismiss in which they argued that "a Harless claim cannot be predicated on the WPCA." Id. at 843-44.

Citing Baisden, Judge Johnston observed that "[t]his Court has previously declined to recognize a new type of Harless claim under the WPCA because the West Virginia Supreme Court has interpreted Harless so narrowly." Id. at 847-48. Judge Johnston went on to

distinguish Roberts, explaining that it involved § 21-5-5 of the WPCA, not § 21-5-3. Id. 848-49. Based on this, he concluded:

> Where this Court has previously refused to recognize the WPCA as a Harless predicate, and where Plaintiffs fail to offer any source of West Virginia authority that recognizes the sections of the WPCA on which they mount their claim as Harless predicates, this Court rejects Plaintiffs' contention their Harless claim may be predicated on the WPCA.

Id. at 849.

Hartman urges the Court to reject Baisden and Wiley, both of which he contends are "inconsistent with decisions of the Supreme Court of Appeals of West Virginia and contrary to a reasonable interpretation of [§ 21-5-3]." (Dkt. No. 13 at 3). Nevertheless, he concedes that "the Supreme Court of Appeals has not issued an opinion which directly addresses this issue." Id. at 3 n.3. For this reason, he proposes, as an alternative to finding a substantial public policy predicated on § 21-5-3, that the Court certify the question to the Supreme Court of Appeals.[2]

### C.

As recognized in Baisden and Wiley, federal courts applying West Virginia substantive law are circumspect in concluding that a particular law amounts to a substantial public policy within the

---

[2] Notably, the courts in Baisden and Wiley were not confronted with the certification question.

meaning of Harless. Indeed, the United States Court of Appeals for the Fourth Circuit has observed:

> West Virginia courts have proceeded with "great caution" in applying public policy to wrongful discharge actions. The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint, and with due deference to the West Virginia legislature as the primary organ of public policy in the state.

Washington v. Union Carbide Corp., 870 F.2d 957, 962-63 (4th Cir. 1989) (internal citations omitted). In Tritle v. Crown Airways, Inc., 928 F.2d 81, 84 (4th Cir. 1990), the Fourth Circuit reaffirmed its holding that "a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances." This principle was expressed most recently by another court within this district. In Frohnapfel v. ArcelorMittal Weirton, LLC, __ F. Supp. 3d __, __ No. 5:14CV45, 2015 WL 1843032, at *6 (N.D.W. Va. Apr. 22, 2015), Judge Bailey explained that the Fourth Circuit has "specifically declined to expand the Harless cause of action by recognizing novel theories of substantial public policy absent a clear statement from the Supreme Court of Appeals of West Virginia."

Based on this precedent, the Court declines to expand Harless to limits as yet unrecognized by the Supreme Court of Appeals. The

closer issue is whether Hartman's argument that § 21-5-3 should constitute a substantial public policy is strong enough to warrant certification of the question to the Supreme Court of Appeals.

**D.**

Under the West Virginia Uniform Certification of Questions of Law Act ("UCQLA"), § 51-1A-1, et seq., federal courts may petition the state's highest court for an answer to a question of state law so long as (i) it is "determinative of an issue in a pending cause in the certifying court," and (ii) "there is no controlling appellate decision, constitutional provision or statute of this state." § 51-1A-3. Indisputably, the question proposed by Hartman satisfies both requirements of the UCQLA. Nevertheless, it remains within the Court's discretion whether to certify the question or to conclude that extant case law provides a sufficient ground for a decision in favor of the defendants. See Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory. It does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism. Its use in a given case rests in the sound discretion of the federal court.").

As an initial matter, the Supreme Court of the United States looks favorably on the lower courts' use of the state certification procedure. In <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 56-62 (1997), the district court, a panel of the Ninth Circuit, and the Ninth Circuit sitting en banc all denied the state attorney general's request to certify the pivotal state law question to the Arizona Supreme Court. Although the Supreme Court of the United States vacated the en banc decision on different grounds, in doing so it admonished the lower courts for not giving "more respectful consideration" to the certification requests. <u>Id.</u> at 78. It also noted the Ninth Circuit's error in requiring "unique circumstances" as a condition precedent to certification. <u>Id.</u> at 79.

As the Supreme Court explained, the prerequisite for certification is a "[n]ovel, unsettled question[] of state law." <u>Id.</u> When such a question arises, federal courts should consider availing themselves of the state certification procedure, which "allows a federal court . . . to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." <u>Id.</u> at 76. Moreover, "[t]aking advantage of certification made available by a State may greatly simplify an ultimate adjudication in federal court." <u>Id.</u> at 79 (internal quotation marks, brackets,

13

and citation omitted); see also Lehman Brothers, 416 U.S. at 394 (Rehnquist, J., concurring) ("State certification procedures are a very desirable means by which a federal court may ascertain an undecided point of state law, especially where, as is the case in [West Virginia], the question can be certified directly to the court of last resort within the State.").

In Frohnapfel, __ F. Supp. 3d at __, 2015 WL 1843032 at *6, Judge Bailey certified to the Supreme Court of Appeals the question whether the West Virginia Water Pollution Control Act established a substantial public policy on which a Harless claim could be based. As in this case, the state's highest court had not addressed the issue. Its silence, however, provided only a necessary, but not sufficient, ground on which to certify the question. Ultimately, Judge Bailey certified the question based on "a strong argument that the [Water Pollution Control Act] articulates a public policy sufficient to support a Harless retaliatory discharge claim." Id. He also relied on the Fourth Circuit's certification of a question to the Supreme Court of Appeals in order to ascertain whether a state statute provided a substantial public policy sufficient for a Harless claim. See Lilly v. Overnight Transp. Co., 425 S.E.2d 214, 217 (W. Va. 1992) (answering the Fourth Circuit's certified question by holding that

"a cause of action for wrongful discharge may exist under West Virginia Code § 17C-15-1(a), § 17C-15-31 and § 24A-5-5(j)").

Here, relying on precedent from the Supreme Court of Appeals, Hartman makes a strong argument that the WPCA establishes a substantial public policy. For instance, the state's highest court has observed that

> the Legislature has placed upon officers in the management of a corporation the duty to see that the Wage Payment and Collection Act is enforced. This duty is founded on a specific statutory requirement designed to further an important public policy. This public policy requires employers to pay the wages of working people who labor on their employer's behalf.

Mullins v. Venable, 297 S.E.2d 866, 871 (W. Va. 1982). Even more forcefully, albeit in an unpublished opinion, the court has stated that the WPCA "reflects a strong public policy in favor of prompt payment of wages." State ex rel. Joseph v. Dostert, No. 15988, 1983 WL 131194, at *3 (W. Va. Dec. 14, 1983) (per curiam). Moreover, in Legg v. Johnson, Simmerman & Broughton, LC, 576 S.E.2d 532, 537 (W. Va. 2002), the court cited Mullins for the proposition that the broad definition of "employee" as used in the WPCA "was adopted to further an important public policy," one that requires employers to pay those who labor on their behalf. See also Shaffer v. Fort Henry Surgical Assocs., Inc., 599 S.E.2d 878, 881 (W. Va. 2004).

**HARTMAN v. WHITE HALL PHARMACY, LLC, ET AL.**                    1:15CV26

**MEMORANDUM OPINION**
_____

Notably, the defendants have offered almost no defense to Hartman's argument that, were the Supreme Court of Appeals to address the pertinent issue, it would decide that § 21-5-3 provides a substantial public policy within the meaning of Harless. They cite to Roberts, where the Supreme Court of Appeals held that § 21-5-5 is a substantial public policy that can support a Harless cause of action. Syl. Pt. 4, Roberts, 444 S.E.2d at 726. At best, however, their reading of Roberts indicates that the decision should not be applied to other provisions of the WPCA.[3]

The defendants also suggest that it would be "dangerous" for the Court to certify the proposed question in this case: "If allowed, the inevitable result is that each and every time a substantial public policy claim is brought in federal court, plaintiffs in West Virginia will always request certification." (Dkt. No. 16 at 3) (emphasis in original). The Court, however, finds little merit in the defendants' fear that the floodgates will be opened.

First, the question posed in this case -- whether § 21-5-3 of the WPCA provides the predicate substantial public policy for a Harless claim -- finds strong support in several decisions of the

___
[3] Notwithstanding that argument, Hartman does not rely on Roberts for his position.

Supreme Court of Appeals. The same cannot be said for "each and every" potential Harless claim, as described by the defendants. Second, certification will not always provide plaintiffs' attorneys with the most desirable vehicle of litigating the public policy issue. Absent a good-faith belief that the Supreme Court of Appeals would render a favorable ruling, counsel may have no incentive to certify a question that, when answered, could foreclose a potential avenue of litigation.

**IV.**

Based on (i) Hartman's strong argument that § 21-5-3 establishes a substantial public policy within the meaning of Harless; (ii) the recognition by the Supreme Court of the United States, as well as courts within this district, that the state certification procedure is an efficient and useful mechanism for resolving an unanswered question of state law; and (iii) the defendants' lack of a persuasive argument against certification, the Court concluded that Hartman's motion should be granted and a ruling on the defendants' motion should be stayed. The Court will enter a separate certification order.

The Court directs the Clerk to transmit copies of this Memorandum Opinion to counsel of record.

DATED: June 19, 2015.

　　　　　　　　　　　　　　　　　　/s/ Irene M. Keeley
　　　　　　　　　　　　　　　　　　IRENE M. KEELEY
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE